705 So.2d 1037 (1998)
Felix CASTILLO, Appellant,
v.
The STATE of Florida, Appellee.
No. 96-1871.
District Court of Appeal of Florida, Third District.
February 11, 1998.
Bennett H. Brummer, Public Defender, and Suzanne M. Froix, Assistant Public Defender, for appellant.
Robert A. Butterworth, Attorney General, and Doquyen T. Nguyen, Assistant Attorney General, for appellee.
Before NESBITT, GERSTEN and FLETCHER, JJ.
FLETCHER, Judge.
Felix Castillo appeals his conviction for first-degree murder, contending that there is insufficient evidence of premeditation.[1] We *1038 vacate the judgment of conviction for first-degree murder and the sentence imposed therefor, and remand the case to the trial court with instructions to enter judgment against Castillo for second-degree murder and to resentence him accordingly.
Maria Diana Munoz was found dead in a hotel room, having been killed by a gunshot fired into the left side of her head from three feet away. Castillo was subsequently indicted for one count of first-degree murder in violation of sections 782.04(1) and 775.087, Florida Statutes (1993). The evidence revealed that Castillo and Munoz had a physically abusive sexual relationship as reflected by the bruises and bite marks on Munoz' body. The final days of this relationship were spent at the hotel where the tempestuous nature of the relationship continued. On checkout day, at approximately 10:00 A.M., a hotel maid passed by their door and heard the voices of a man and a woman arguing inside. The man's voice was low and the maid was unable to understand the specific words he used, although it sounded to the maid as if the man was asking for an explanation and the woman was providing it. The maid heard the woman say, "I swear, Poppy, it wasn't me. Call Andres and ask him." A brief local telephone call was made from the room at 11:01 A.M.
Between 11:00 A.M. and 11:30 A.M. that day a front desk employee telephoned the room to ascertain if Castillo was checking out. Although a woman answered the telephone, a male voice advised that he would be doing so. The employee later observed Castillo getting into a car. The room key had been placed on the front desk. At noon the maid checked the room and found Munoz on the floor, dead from the gunshot.
Castillo, during subsequent custodial interviews, gave varying accounts of the event. Both accounts, although inconsistent with one another, were tales of sex, drugs, jealousy and rage. Missing from Castillo's accounts were statements of any conscious purpose to kill Munoz.
There is little evidence as to the circumstances specifically surrounding the shooting, and that evidence is consistent with Castillo's accounts of the shooting. Basically, the State points to Castillo's prior physical abuse of Munoz (including hitting her on the head with a gun), the abuse during the hotel stay, and Castillo's opportunity to reflect on the nature of his act. The State is correct, of course, that it may prove premeditation by circumstantial evidence, but that evidence must be inconsistent with every other reasonable inference that could be drawn. Norton v. State, 23 Fla.L.Weekly S12, ___ So.2d ___, 1997 WL 792794 (Fla. Dec. 24, 1997).
"Where the State fails to exclude all reasonable hypotheses that the homicide occurred other than by premeditated design, the defendant's conviction for first-degree murder cannot be sustained."
Norton, 23 Fla.L.Weekly at S13, ___ So.2d at ___.
Here, although the State's evidence arguably is consistent with premeditation, it falls short of excluding every reasonable hypothesis of homicide by other than premeditated design. In accordance with Norton, we reverse Castillo's conviction and sentence for first-degree murder. However, the evidence, including Castillo's own custodial accounts, supports a finding that Castillo committed second-degree murder. The case is remanded to the trial court with instructions to enter judgment against Castillo for second-degree murder in violation of sections 782.04(2) and 775.087, Florida Statutes (1993), and to resentence him accordingly.
Reversed and remanded for further proceedings consistent herewith.
NOTES
[1] "Premeditation is defined as more than a mere intent to kill; it is a fully formed conscious purpose to kill. This purpose may be formed a moment before the act but must exist for a sufficient length of time to permit reflection as to the nature of the act to be committed and the probable result of that act."

Coolen v. State, 696 So.2d 738, 741 (Fla.1997).